UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LILA PETETT, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:21-cv-195 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| DENNIS MCDONOUGH, SECRETARY, | : | |
| DEPARTMENT OF VETERANS AFFAIRS, | : | |
| | : | |
| Defendant. | | |

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (DOC. NO. 19)**

---

Presently before the Court is Defendant's Motion for Summary Judgment ("Motion")
(Doc. No. 19). In the Motion, Defendant Dennis McDonaugh, Secretary of the Department of
Veterans Affairs, ("Defendant") seeks summary judgment on Plaintiff Lila Petett's ("Plaintiff")
claim of wrongful discharge based upon age, race, and sex. (Doc. No. 19.) Defendant argues that
Plaintiff cannot make a *prima facie* showing of discrimination. (*Id*.) Plaintiff argues that her
removal constituted discrimination predicated on her age, sex, and race. (Doc. No. 21 at PageID
1176.)

For the reasons discussed below, Defendant's Motion for Summary Judgment is
**GRANTED**.

I.      **BACKGROUND**

Plaintiff is an African-American woman who was born on March 11, 1960. (Doc. No. 1 at
PageID 3-4.) From November 30, 2014 to May 14, 2017, Plaintiff was employed by Dayton VA
Medical Center ("DVAMC") as a Nursing Assistant. (Doc. No. 18-7 at PageID 888.) After

1

obtaining a Bachelor of Science in Nursing, Plaintiff applied for and was hired as a staff nurse at DVAMC.  (Doc. Nos. 18-1 at PageID 116; 18-7 at PageID 888.)  As a newly hired nurse, Plaintiff was subject to a two-year probationary period pursuant to 38 U.S.C. § 7403.  (Doc. No. 18-7 at PageID 888.)

Plaintiff's probationary period began on May 14, 2017, and she was initially assigned to the Acute Care Medical Surgical Unit ("SAM Unit").  (Doc. Nos. 18-5 at PageID 631; 18-7 at PageID 888.)  During her time with the SAM Unit, one of Plaintiff's supervisors was Amy Tipple ("Tipple").  (Doc. No. 18-1 at PageID 129.)  Plaintiff was reassigned to the Inpatient Mental Health Unit on January 6, 2019 and Kathryn Hils ("Hils") became her supervisor.  (Doc. No. 18-5 at PageID 631.)  During her orientation with the Mental Health Unit, Plaintiff completed mandatory trainings on a variety of topics, including the Health Insurance Portability and Accountability Act ("HIPAA") and patient privacy.  (Doc. Nos. 18-5 at PageID 631-32; 18-8 at PageID 892, 903.)

After several weeks in the Mental Health Unit, Hils conducted a review of Plaintiff's performance.  (Doc. No. 18-5 at PageID 633.)  Hils addressed several issues with Plaintiff, including tardiness, the failure to correctly administer suboxone as prescribed to a veteran, and time management and prioritization.  (Doc. No. 18-6 at PageID 859.)  Despite these issues, Hils still provided positive feedback to Plaintiff by informing her she had "met the goal of communication with and advocacy for our Veterans," and that she was pleasant, positive, and encouraging to Veterans.  (*Id*.)

Apart from her review with the Mental Health Unit, Plaintiff was required to receive a performance evaluation from the SAM unit.  (Doc. No. 18-5 at PageID 633.)  As part of this evaluation Plaintiff was required to submit input to her former supervisor with the SAM Unit, Tipple, by March 1, 2019.  (Doc. Nos. 18-5 at PageID 633; 18-6 at PageID 863-64.)  Tipple and

Hils emailed Plaintiff on January 8, 2019, January 29, 2019, and February 20, 2019, to remind her to submit her input.  (Doc. No. 18-6 at PageID 863-64.)  From March 3, 2019 to March 11, 2019, Plaintiff took annual leave.  (Doc. No. 18-5 at PageID 633.)  Prior to her departure for leave, Plaintiff took four patient comment cards to use as supporting information for her evaluation. (Doc. No. 18-1 at PageID 183-84.)  Plaintiff made copies of the four comment cards using a DVAMC copier and left the original cards on site at DVAMC.  (*Id*.)  One of the comment cards Plaintiff copied had a patient sticker affixed to it.  (*Id*. at PageID 186.)  The patient sticker contained confidential information such as, the patient's name, date of birth, and social security number.  (*Id*. at PageID 186-87.)

Plaintiff first took the copies of the comment cards home and then, on March 6, 2019, to the Dayton Public Library.  (*Id*. at PageID 185.)  Plaintiff proceeded to use the scanner at the Dayton Public Library to scan copies of the comment cards to Tipple.  (*Id*. at PageID 186-91.) Tipple received the scanned comment cards on March 6, 2019 at 3:29 PM from the email address: daytonlibrary.noreply@gmail.com.  (Doc. No. 18-4 at PageID 607.)  Tipple then forwarded the email to Hils to verify the information submitted by Plaintiff.  (*Id*.; Doc. No. 18-5 at PageID 633.)

Upon opening the attachments to Plaintiff's email, Hils noticed that one of the comments cards submitted by Plaintiff, "included a patient's full name, birthdate, and social security number."  (*Id*.)  Hils notified her supervisor, T.L. Drake ("Drake"), about the potential violation of HIPAA and VA policies protecting patient privacy.  (*Id*. at PageID 634.)  Drake directed Hils to complete a fact-finding investigation.  (*Id*.)

On March 15, 2019, Hils conducted a fact-finding meeting which included: Plaintiff; Lorrain Cheek, a union representative; and, Erin Yount, one of Plaintiff's supervisors in the Mental Health Unit. (Doc. No. 18-6 at PageID 876.)  Plaintiff initially denied removing patient documents

from DVAMC, but, upon seeing a copy of the March 6 email, admitted to removing copies of patient documents from DVAMC and scanning them to Tipple at the Dayton Public Library. (*Id*.) Hils ultimately concluded that Plaintiff had violated a number of policies related to patient privacy and recommended that the matter be forward to the Nurse Professional Standards Board ("NPSB") for review. (Doc. Nos. 18-5 at PageID 634; 18-6 at PageID 874-76.)

On April 30, 2019, Plaintiff and her union representative attended a hearing conducted by the NPSB. (Doc. No. 18-1 at PageID 213.) The NPSB ultimately determined there was evidence that Plaintiff, "removed patient sensitive data from the facility and scanned the information into an unsecure non-VA network (Dayton Metro Library) and e-mailed it back to the agency for her proficiency." (Doc. No. 18-2 at PageID 415.) The NPSB recommended that Plaintiff be "separate[ed] from service during the probationary period." (*Id*.) Drake accepted the NPSB's recommendation and Plaintiff's last day was on or around May 10, 2019. (Doc. No. 18-5 at PageID 634-35.)

Plaintiff filed an EEO complaint on July 12, 2019 alleging one claim of harassment and one claim of disparate treatment stemming from her May 2019 termination. (Doc. Nos. 18-2 at PageID 394; 18-11 at PageID 1144-45.) On April 21, 2021, the VA issued its Final Agency Decision rejecting both of Plaintiff's claims. (Doc. No. 18-10.)

On July 19, 2021, Plaintiff filed her Complaint alleging discrimination on the basis of sex, race, and age. (Doc. No. 1.) Defendant filed the present Motion on June 23, 2023 (Doc. No. 19) and Plaintiff filed her response on July 28, 2023 (Doc. No. 21). Defendant filed its reply on August 18, 2023. (Doc. No. 23.) The matter is fully briefed and ripe for review and decision.

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c).  The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id.* at 248-49.  It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).  Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

### III.    ANALYSIS

Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination under the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), burden-shifting framework. (Doc. No. 19 at PageID 1158-60.) Moreover, Defendant argues that even if Plaintiff could establish a *prima facie* case, she cannot prove that Defendant's non-discriminatory reason for terminating her was pretextual. (*Id*. at PageID 1163-65.) In response, Plaintiff argues that Defendant created the issue by creating the comment cards and leaving the comment cards in public view. (Doc. No. 21 at PageID 1176.) Plaintiff further argues that similarly situated employees were treated more favorably than Plaintiff. (*Id*. at PageID 1177.)

#### A.  The *McDonnell Douglas* Framework

Title VII makes it an "unlawful employment practice for an employer. . . to discharge any

6

individual, or otherwise to discriminate against any individual. . . because of such individual's race, color, religion, sex, or national origin…." 42 U.S.C. § 2000e-2(a)(1). Similarly, the Age Discrimination Act of 1967 prohibits discrimination in federal employment on the basis of age. 29 U.S.C. § 633a(a). Where a plaintiff relies on circumstantial evidence of discrimination, the Court analyzes the claim using the burden shifting framework from *McDonnell Douglas*. *Hardy v. Eastman Chem. Co.*, 50 F. App'x 739, 741 (6th Cir. 2002); *Johnson v. Donahoe*, 642 F. App'x 599, 608 (6th Cir. 2016).

Under the *McDonnell Douglas* burden shifting analysis the "plaintiff has the initial burden of demonstrating" the elements of the claim. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727 (6th Cir. 2007). Thus, the plaintiff must establish a *prima facie* case of discrimination. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). If the plaintiff succeeds, then "the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination." *Sullivan v. Coca-Cola Bottling Co.*, 182 F. App'x 473, 477 (6th Cir. 2006) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981)). If the employer does so, then the burden shifts back to the plaintiff to prove "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Sullivan*, 182 F. App'x at 477 (quoting *Burdine*, 450 U.S. at 253)). "Throughout the analysis, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Sullivan*, 182 F. App'x at 477 (quoting *Burdine*, 450 U.S. at 253).

### i. The *Prima Facie* Case

Plaintiff does not contend that she has direct evidence of discrimination; therefore, the Court moves to the first step of the *McDonnell Douglas* burden shifting analysis. Plaintiff must

establish a *prima facie* case of discrimination by showing, "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

Defendant does not directly challenge the first two prongs of Plaintiff's *prima facie* case. (Doc. No. 19 at PageID 1160.)  Plaintiff is a member of three protected classes and she was subject to an adverse employment decision.  Defendant does challenge the last two prongs: that Plaintiff was qualified and a similarly situated non-protected employee was treated more favorably.  (Doc. No. 19 at PageID 1160-63.)

### a.  Plaintiff's Qualifications

Defendant first argues that Plaintiff was not qualified for the position because she did not understand HIPAA and privacy compliance and the proper method of securely transmitting confidential patient information.  (Doc. No. 19 at PageID 1160.)  Plaintiff does not address this point in her opposition.

The Sixth Circuit laid out the relevant inquiry in *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003).  In *Wexler*, the Sixth Circuit determined, "[a]t the prima facie stage, a court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Id.* at 575.  Indeed, the plaintiff may meet this burden by "presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.*; *see also Guyton v. Exact Software N. Am.*, No. 2:14-CV-502, 2016 U.S. Dist. LEXIS 95265, at *26, 2016 WL 3927349, at *8-9 (S.D.

Ohio July 21, 2016). However, the Court's qualifications analysis should not be conflated with the defendant's nondiscriminatory reason for termination. *Schneider v. P&G*, No. 1:10-CV-747, 2012 U.S. Dist. LEXIS 6501, at *28, 2012 WL 174648, at *8 (S.D. Ohio Jan. 20, 2012) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)).

Defendant does not allege that Plaintiff was not qualified for her position due to a lack of medical education, rather Defendant contends that Plaintiff failed to appreciate the importance of patient privacy. However, the patient privacy violation also forms the basis of Defendant's non-discriminatory reason for dismissing Plaintiff in the first place. As Defendant relies on the privacy violation as its reason for terminating Plaintiff, the Court will not consider it when determining whether she was qualified for the position. *See Kaufman v. Gen. Elec. Co.*, No. 3:16-cv-204, 2017 U.S. Dist. LEXIS 80924, at *9, 2017 WL 2312477, at *3 (W.D. Ky. May 26, 2017) (citing *Sokolnicki v. Cingular Wireless, LLC*, 331 F. App'x 362, 367 (6th Cir. 2009)); *see also Cline*, 206 F.3d at 660-61 ("when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff"); *see also Guyton*, 2016 U.S. Dist. LEXIS 95265, at *26, 2016 WL 3927349, at *8-9 (finding that the defendant's non-discriminatory reason for termination could not also serve as its basis for arguing the plaintiff was not qualified for the position). The Court will assume, for purposes of this order, that Plaintiff is qualified in all other respects.

### b. Treatment of Similarly Situated Employees

Assuming *arguendo* that Plaintiff was qualified for her position, she must still demonstrate that she was treated less favorably than similarly situated employees outside of her protected class. Defendant argues that Plaintiff has not shown that "any non-protected, similarly situated

employees were treated more favorably than she was for a like transgression—specifically, violating Veteran privacy by removing patient information from the DVAMC and/or transmitting patient information from an unencrypted external machine." (Doc. No. 19 at PageID 1161.)  In response, Plaintiff points to several staff nurses who committed various transgressions and were not disciplined.  (Doc. No. 21 at PageID 1177.)

To be treated as similarly situated, an employee must "[1] have dealt with the same supervisor, [2] have been subject to the same standards and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  However, an exact correlation with the factors discussed in *Mitchell* is not required, and the Court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 396 (6th Cir. 2008) ("The purpose of Title VII and Section 1981 are not served by an overly narrow application of the similarly situated standard").

Defendant does not dispute the applicability of the first two prongs to Plaintiff's identified comparators and, instead, focuses on *Mitchell*'s third prong.  In determining whether a plaintiff's conduct is similarly sufficient to a comparator's, courts look to, "whether the comparators' actions 'were of comparable seriousness to the conduct for which [p]laintiff was discharged.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (quoting *Mitchell*, 964 F.2d at 583).  "A plaintiff, 'is not required to show that his proposed comparator's actions were identical to his own.'"  *Jackson*, 814 F.3d at 777 (quoting *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 459 (6th Cir.2010)).  However, "a plaintiff cannot establish a reasonable inference of

discriminatory motive based on her 'employer's more severe treatment of more egregious circumstances.'" *Jackson*, 814 F.3d at 777 (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir.2002)).

Several of Plaintiff's comparators can be dismissed immediately. For instance, Plaintiff testified that Nikki, a fellow nurse, was not given write-ups for having fake nails or for tardiness. (Doc. No. 18-1 at PageID 265-67, 275-76.) Similarly, Plaintiff testified that fellow nurses Misty Henry, Jonathan Daves, and Doug Shivers were never written up for their tardiness. (*Id*. at PageID 290-91, 297-300.) Plaintiff also alleges that Lisa Poland ("Poland") was never disciplined for giving patients candy out of her purse, preparing food for them at the nurse's station, or reprimanding patients. (*Id*. at PageID 273-74.)

These instances are not comparable to the conduct that led to Plaintiff's termination. Wrongfully disclosing a patient's identification information is a serious breach of privacy that is punishable by law. *See* 42 USC § 1320d-6. The wrongdoings identified above carry nowhere near the same amount of risk for DVAMC as a healthcare institution or for patients who could have their social security numbers and dates of birth exposed to the public. Thus, the employees described above are not suitable comparators.

Plaintiff does identify two instances of potentially comparable conduct. First, Plaintiff alleges that a nurse named Christopher Bonnie[1] made a medical error that could have resulted in the death of a patient for which he was not punished. (Doc. No. 18-1 at PageID 269-70.) However, there is a key issue with the evidence Plaintiff uses to support her assertion. In relating how she knew about this event, Plaintiff states, "I heard about it from an older white lady there who befriended me because she saw stuff…." (Doc. No. 18-1 at PageID 270.) This is textbook hearsay,

---

[1] Plaintiff mistakenly identified Christopher Bonnie as Chris Bonner. (Doc. No. 18-5 at PageID 634.)

"an out-of-court statement… offered to prove the truth of the matter asserted in the statement." *Grizzard v. Nashville Hospitality Cap., LLC*, No. 3:18-cv-34, 2021 U.S. Dist. LEXIS 142567, at *16, 2021 WL 3269955, at *9 (M.D. Tenn. Jul. 30, 2021) (citing Fed. R. Evid. 801(c)).  In the Sixth Circuit, "'hearsay evidence cannot be considered on a motion for summary judgment.'" *Grizzard*, 2021 U.S. Dist. LEXIS 142567, at *16, 2021 WL 3269955, at *9 (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)); *see also Madison America, Inc. v. Preferred Med. Sys., LLC*, 548 F. Supp. 2d 567, 577 (W.D. Tenn. 2007) (finding that a witness' deposition testimony regarding statements from his conversations with prospective customers were inadmissible hearsay and could not be considered in ruling on a motion for summary judgment); *Kouider on behalf of Y.C. v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 782 (N.D. Ohio Aug. 19, 2020) (holding that a witness' deposition testimony regarding a specific statement from a conversation with her sister was inadmissible hearsay and could not be considered in ruling on a motion for summary judgment).  Plaintiff offers no exception to hearsay and no other evidence that this incident occurred; therefore, the Court will not consider Bonnie as a comparator.

The second incident Plaintiff identified involves Poland's alleged placement of the patient identifier sticker on the comment card that led to her dismissal.  (Doc. No. 18-1 at PageID 186.) Plaintiff makes several arguments related to the sticker, including that it was a breach of confidentiality by the VA to place the sticker on the comment card in the first place and the card was stuffed in an envelope in public view.  (Doc. No. 21 at PageID 1177-78.)

As an initial matter, Plaintiff's argument that it was a breach of confidentiality by Poland to place the patient sticker on the comment card is unsupported.  Plaintiff cites no policy, law, document, or testimony in support of this position.  Conversely, Hils attested that Veteran comment cards were for internal use only and were never to be removed from the DVAMC.  (Doc.

No. 18-5 at PageID 635.)  Moreover, Plaintiff's allegation that the card was displayed in an envelope in public view is a flawed comparison.  The patient identification information on the comment card stuffed into the envelope, regardless of best practices, is still shielded from public view inside the envelope.  Indeed, the comment card was still at the nurse's station within the control of the DVAMC.

Plaintiff's termination was prompted by the removal and transmission by use of external machines of patient identification information.  Plaintiff does not allege that Poland engaged in similar conduct.  Instead, Plaintiff testifies that Poland attached patient stickers to comment cards, which does not violate HIPPA or VA privacy policy, and left those cards in an area where the patient identification information could not be seen or accessed by the public.  Plaintiff fails to show that Poland removed patient identification information from DVAMC or shared patient identification information by means of an outside piece of technology.  The degree of severity between Plaintiff and Poland's actions are not comparable.  *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir. 2002) (holding that plaintiff was not similarly situated to three other employees where all had engaged in acts of negligence, but only plaintiff's negligence resulted in serious injury); *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 569 (6th Cir. 2009) (holding an employee was not similarly situated to a plaintiff who had failed to chart four patients in a shift where the employee had failed to chart one patient in a shift); *Colvin*, 390 F. App'x at 458-59 (holding that plaintiff and a fellow employee were not similarly situated where, despite both having issues filling prescriptions, plaintiff had "erroneously dispensed ten times the ordered amount of a controlled substance, failed to include relevant dosage information on a prescription, and neglected to catch a physician's error regarding how a drug should be administered").

Therefore, Plaintiff has failed to demonstrate that a similarly situated non-protected

13

employee was treated more favorably than her.  Consequently, Plaintiff has failed to establish a *prima facie* case of discrimination.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 19).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, September 5, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
